## BAUMGARDNER et v STATE ex FULTON

Ohio Appeals, 6th Dist, Lucas Co

No 2926. Decided April 20, 1934

Mulholland & Hartman, Toledo, George W. Ritter, Toledo, Geer & Lane, Toledo, Rhoades & Rhoades, Toledo, Rowe, Dillon & Williams, Toledo, Robert C. Dunn, Toledo, John S. Saalfield, Toledo, R. G. Davies, Toledo, Frank M. Sala, Toledo, and Stanley M. Friedman, Toledo, for plaintiffs in error.

John W. Bricker, Attorney General, Columbus, and Boggs & Chase, Toledo, for defendant in error.

CROW, KLINGER and GUERNSEY, JJ, (3rd Dist) sitting.

**OPINION**

By GUERNSEY, J.

The following questions are raised by the pleadings, motions, record and error proceeding:

1. Is stockholders' liability in Ohio a primary or secondary liability?

2. Has the State of Ohio, under the Banking Act, and particularly §§710-75 and 710-96, GC, conferred on or delegated to the Superintendent of Banks, the power and duty of determining the necessity for and the amount of stockholders' assessment and if so, is his determination of these facts conclusive and final and not to be controverted in an action brought to recover stockholders' liability?

3. When the superintendent has determined upon and made an assessment of 100% of the liability, is an action to recover the same an action at law or an action in equity?

4. May stockholders against whom separate judgments are sought, be joined as parties defendant in such an action?

5. May service of summons in such an action be made on a stockholder defendant in a county other than the county in which such action is brought?

6. Is it necessary in such an action to join all stockholders as parties defendant?

7. In the petition in such an action is it necessary to separately state and number the causes of action?

8. Does a petition in such an action containing the allegations hereinbefore set forth, state a cause of action?

9. Are the facts hereinbefore set forth, sufficient to sustain the allegations of the petition?

10. Are the stockholders of a bank liable on their super-added liability for the debts of the bank contracted prior to January 1, 1913, the effective date of the amendment to the Constitution?

11. Are stockholders who acquired some of their stock holdings in a bank prior to January 1, 1913, the effective date of the constitutional amendment, imposing double liability, and have since exchanged their certificates of such stock for certificates of a date subsequent to said date, and received stock dividends thereon, liable in any respect for any of the debts or obligations of the bank at the time it closed on August 17, 1931?

12. Is fraud in a bank inducing a person to acquire stock in and become a stockholder in such bank, available as a defense to such person in an action to enforce the double liability of stockholders?

The answers to some of these questions will necessarily reflect on the answers to others. The questions will be considered in the order mentioned.

**1. IS STOCKHOLDERS' LIABILITY IN OHIO A PRIMARY OR SECONDARY LIABILITY?**

The history of double liability of stockholders in Ohio dates back to the Constitution of 1851. In that Constitution there appeared what was known as Section III of Article XIII, the pertinent provisions of which are as follows:

"Dues from corporations shall be secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but in all cases, such stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereof, to a further sum at least equal in amount to such stock."

The constitutional provision affected stockholders of all corporations, including banks; and was in effect from 1851 to 1903 in substantially the same form as originally enacted. In 1903 the above section was amended to read as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable other than for the unpaid stock owned by him or her."

From 1903 until January 1, 1913, there was no double liability on stockholders of any corporation in Ohio.

In the year 1912, a Constitutional Convention was held in Ohio, and as a result an amendment was adopted to the Constitution, which became effective on Jan. 1, 1913, and which is known as §3 of Art. XIII of the Constitution, the pertinent part of which is as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her; except that stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

This constitutional provision is the one under which double liability is sought to be enforced in this action.

All that part of the first paragraph of the present §III of Art. XIII of our Constitution, following the semicolon in such paragraph, is patterned after the National Banking Act, §5151 of the United States Compiled Laws, and also known as §63 of Title XII on Banks and Banking of the United States Code.

That part of said section of the National Banking Act which relates to stockholders' liability, is as follows:

"Sec. 63. The stockholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

By comparison, it will be observed that almost the identical language is used in the amendment adopted to the Ohio Constitution in 1912 as is used in the National Banking Act.

The old constitutional provision, §III, Art. XIII, of the Constitution of 1851, was not self-executing, while the present §III, Article XIII of the amendment adopted in 1912 has been held by the Supreme Court, in the case of Lang v Osborn Bank, 100 Oh St, 51, to be self-executing.

Following the adoption of the Constitution of 1851, the legislature passed an act to make effective and provide for the imposition of double liability. This act was passed May 1, 1852, and amended April 17, 1854, and provides as follows:

"All stockholders of any railroad, turnpike or plankroad, magnetic telegraph or bridge company, or any joint stock company organized under the provisions of this act, shall be deemed and held liable to an amount equal to their stock subscribed, in addition to said stock, for the purpose of securing the creditors of such company; and the trustees or directors of every society, or association incorporated under the sixty-sixth section of this act, shall be deemed and held individually liable for all debts contracted by them for their respective societies or associations. 1 S. & C. Stat, 310; 4 Curwin's State., 2582."

It will be observed that under the terms of the constitutional provision in effect prior to 1903, the liability was to be determined by legislative enactment, and under the provisions of the act passed May 1, 1852, and amended April 17, 1854, putting this constitutional provision into effect, the stockholders were held liable to an amount equal to their stock for the purpose of securing the creditors of such company.

The courts of Ohio, under the Constitution of 1851 and the laws passed thereunder, held that stockholders were only **secondarily liable.** The language of the law fixing the liability made it a secondary liability, and under this law it was held that the creditors' right to pursue the stockholders accrued only when the remedies

against the corporation were exhausted either by process or by the corporation's insolvency. **Morgan v Lewis, 46 Oh St, 1; Barrick v Gifford, 47 Oh St, 180; Younglove v Lime Company, 49 Oh St, 563; Bronson v Schneider, 49 Oh St, 438.**

This remained the law of Ohio until 1903, when double liability was abolished.

The wording of that part of the constitutional amendment of 1912, adopted from the National Banking Act, is also incorporated in the provision of §710-75 GC. And in addition, the provisions of §64 of the National Banking Act is also incorporated in said section.

The federal courts, prior to the adoption of the constitutional amendment in 1912, had uniformly held that clause

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

appearing in §63 of the National Banking Act, imposed a primary liability on stockholders. Included in the cases in which this holding was made, are Kennedy v Gibson, 8 Wall., 75 U. S., 489; Casey v Galli, 94 U. S., 675; Germania Nat. Bank v Case, 99 U. S., 628; Rushnell v Leland, 164 U. S., 684.

The reasons for this holding are set forth in the opinion in the case of Kennedy v Gibson, 8 Wall (75 U. S., 489) in the following language:

"It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement and might be attended with large losses by insolvency, and otherwise, in the intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. The same remarks apply to enforced collections from the stockholders. A speedy adjustment is necessary to the efficiency and utility of the law; the interests of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute, that any surplus which may remain

after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered."

This holding has been either directly or inferentially followed and adopted by the courts of many of the states where a similar provision has been incorporated in the constitution and/or laws of the state. Among these cases are State Bank v Gottschall, 121 Ore., 92; Hanson v Harris, 28 Pac., 2nd, 649; State ex Thompson v State ex Bank Commissioner, 248 Pac., 1110; Davis v Moore, 130 Ark., 128, 197 SW, 296; Houston National Bank v Chapman, 263 SW, 929; Commissioner of Banks v Trust Company, 247 Mass., 337; Chevous v Garrito, 89 Fla., 12, 102 Southern, 754.

It has long been a well-settled rule in Ohio that where a statute has been adopted from another state where it has received a settled construction, the presumption is that such construction is also adopted and that the terms of the statute are used in the same sense. This rule was first stated in **Gale v Priddy, 66 Oh St, 400,** at page 405, and has been cited and followed by the Supreme Court of Ohio in many later cases, and is definitely established as the law of this state.

In view of the fact that all that part of the first paragraph of the amendment of the constitution following the semicolon, is adopted from the National Banking Act, which has received a settled construction by the federal courts, as well as the courts of other states, the rule above stated applies and such construction is the construction to be adopted by the courts of this state in construing such provision, and the liability established by such clause in the amendment to the constitution is primary and not secondary.

It is contended by the plaintiffs in error that the court in construing the provision of the present §III of Article XIII of the **Constitution** should follow the construction placed on §III of Article XIII of the **Constitution of 1851** and the laws enacted pursuant thereto, hereinbefore referred to, because of the similarity of the language used in the first part of the first paragraphs of both sections, in that §III of Article XIII of the Constitution of 1851 provides, "Dues from corporations shall be secured by such individual liability of stockholders, and other means, as may be prescribed by law"; while §III of Article XIII of the present **Constitution** provides, "Dues from private corporations shall be secured by such means

as may be prescribed by law." But a comparison of the two provisions reveals that the provisions of §III of Article XIII of the Constitution of 1851, applied without differentiation to liability for unpaid stock and super-added or double liability in any corporation, while the provisions of §III of Article XIII of the present Constitution differentiate between liability for unpaid · stock and super-added or double liability, all that part of said section preceding the semi-colon in the first paragraph applying to liability for unpaid stock in any corporation, and all that part following the semi-colon in the first paragraph applying to super-added or double liability of stockholders of corporations authorized to receive money on deposit.

The fact that there is a change in the wording of the present section, from the wording in the section in the Constitution of 1851, would of itself tend to show a change in the policy of the state with reference to stockholders' liability, and this fact taken in connection with the fact that the subject matter of the second clause of the first paragraph of the present section is different from the subject matter of the first clause of said paragraph, clearly indicates that the second clause is not dependent upon or modified by the first clause, and the incorporation of the clause patterned after the provisions of the National Banking Act, in the first paragraph of the present section following the semi-colon, was intended to be and was an adoption of the federal rule with reference to the super-added or double liability of stockholders of banking corporations.

This holding that under the present §III of Article XIII the double or super-added liability of stockholders of banking corporations is primary, is also supported by the following cases:

State ex Fulton v Weinberger et, Oh Ap, 8th Dist, Cuyahoga County, decided January 23, 1933; reported in 13 Ohio Law Abstract, page 554, second subdivision of the syllabus;

State ex Fulton v Cole, Oh Ap, 9th District, Summit County, decided March 15, 1933, reported in 14 Ohio Law Abstract, p. 464.

2. HAS THE STATE OF OHIO, UNDER THE BANKING ACT, AND PARTICULARLY §§710-75 AND 710-95 GC, CONFERRED ON OR DELEGATED TO THE SUPERINTENDENT OF BANKS, THE POWER AND DUTY OF DETERMINING THE NECESSITY FOR AND THE AMOUNT OF STOCKHOLDERS' ASSESS-MENTS, AND IF SO, IS HIS DETERMINATION OF THESE FACTS CONCLUSIVE AND FINAL AND NOT TO BE CONTROVERTED IN AN ACTION BROUGHT TO RECOVER STOCKHOLDERS' LIABILITY?

Section 192 of Title 12, Banks and Banking, of the United States Code, provides for the enforcement of the individual liability of stockholders in national banking associations, the part of such section relating to such enforcement being as follows:

"On becoming satisfied, as specified in §§131 and 132, that any association has refused to pay its circulating notes as therein mentioned, and is in default, the Comptroller of the Currency may forthwith appoint a receiver, and require of him such bond and security as he deems proper. Such receiver, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such association, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."

The provisions of the state banking act with reference to the enforcement of the super-added liability of stockholders, are contained in §§710-75 and 710-95 GC. The pertinent parts of said sections are as follows:

"Sec 710-75 GC. INDIVIDUAL LIABILITY OF STOCKHOLDERS. Stockholders of banks shall be held individually responsible equally and ratably, and not one for another, for all contracts, debts and engagements of such bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. * * * At any time after taking possession of a bank for the purpose of liquidation, when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of the stockholders."

"Sec 710-95 GC. POWERS AND DUTIES AFTER TAKING POSSESSION. Upon taking possession of the property and business of such bank, the superintendent of banks is authorized to collect money due to

680

such bank, and to do such other acts as are necessary to preserve its assets and business, and shall proceed to liquidate the affairs thereof as hereinafter provided, * * * and may, if necessary to pay the debts of such bank, enforce the individual liability of the stockholders."

It will be noted that the last clause of §710-95, GC, is in practically the same language as the last clause of that part of §192, Title 12 of the United States Code, above quoted, and that the last sentence of §710-75 GC fixes the time for the enforcement of such liability.

The above quoted portion of §192 of the National Banking Act is in practically the same form as it was at the time of the decision in the case of Kennedy v Gibson, 75 U. S., above mentioned, and in applying the said provisions of said section, it was held in that case that:

"It is for the Comptroller of Currency to decide when it is necessary to institute proceedings against the stockholders, to enforce their personal liability, and how much shall be collected.

"His determination is conclusive, and the stockholders cannot question it in the litigation that may ensue."

This holding was followed and applied in the federal cases and in the cases from other states hereinbefore referred to, as well as in many other federal and state cases.

In the opinion of the court in the case of Kennedy v Gibson, supra, the following language is used:

"The receiver is the instrument of the comptroller. He is appointed by the comptroller, and the power of appointment carries with it the power of removal. It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability and whether the whole or a part, and if only a part, how much, shall be collected.

"These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of the suit by the receiver. The fact must be distinctly averred in all such cases, and if put in issue must be proved."

Applying the rule of construction set forth in the case of Gale v Priddy, 66 Oh St, 400, supra, it is clear that by the amendment of the Constitution of 1912, above referred to, and the Banking Act providing for the procedural steps in enforcing the liability provided in the constitution, power is conferred upon and delegated to the superintendent of banks at any time after taking possession of the bank for the purpose of liquidation, to ascertain upon such date as shall be satisfactory to him that the assets of such bank will be insufficient to pay its debts and liabilities, and upon such ascertainment being made, to enforce the individual liability of stockholders, and it is for him to decide upon such data as shall be satisfactory to him, when it is necessary to institute proceedings against the stockholders to enforce their personal liability and how much shall be collected, and his ascertainment and decisions are conclusive, and the stockholders cannot question them in the litigation that may ensue.

It is held in the case of Bushnell v Leland, 164 U. S., 684, decided January 4, 1897, that:

"Revised statutes, §§5151 and 5234, empowering the comptroller to appoint receivers for insolvent national banks, and to make ratable assessments upon the stockholders, does not vest in him a judicial power in violation of the constitution."

The provisions of the constitution of this state, and the Constitution of the United States, with reference to the vesting and exercise of judicial power, are similar, and the holding of the Supreme Court that the power conferred on the comptroller to make ratable assessments on the stockholders, does not vest in him a judicial power in violation of the federal constitution, is by analogy applicable to the power vested in the superintendent of banks under the provisions of the Ohio Constitution and Banking Act.

Furthermore, as the business of banking under the constitution and laws of Ohio is of a quasi public character (124 Oh St, 375, at 380), the determination and powers of the superintendent of banks as an official of the state under the supervisory and regulatory power over corporations reserved in the state and to its officers under §II of Article XIII of the Constitution, are of an executive rather than a judicial character and do not come within the inhibition of the constitution. .

Under the provisions of §710-75 GC and other cognate sections of the General Code, the taking possession of the property and business of a bank by the superintendent of banks for the purpose of liquidation, fixes the right of the superintendent to proceed with the liquidation and as incidental to such liquidation to ascertain that the assets of the bank will be insufficient to pay its debts and liabilities, and enforce the double liability of stockholders.

Sec 710-89 GC, in effect at the time. the superintendent took possession of the property and business of the Ohio Bank, prescribes nine separate and independent grounds upon the apparent existence of any one ·of which the superintendent is authorized to take possession of the property and business of a bank for the purpose of liquidation.

Sec 710-100, GC, provides:

"Whenever any such bank of whose property and business the superintendent has taken possession, as aforesaid, deems itself aggrieved thereby, it may at any time within thirty days after taking such possession apply to the Common Pleas Court of the county in which the office if such bank was located, to enjoin further proceedings in liquidation, and said court after citing said superintendent of banks to show cause why further proceedings should not be enjoined and hearing the allegations and proofs of the parties and determining the facts, may dismiss such application or enjoin the superintendent of banks from further proceeding, and direct him to surrender such business and property to such person, partnership, corporation, company, society or association."

While by this section the authority to bring such action is conferred on the bank, under the laws of Ohio a stockholder would, in the event such bank refused to bring such proceeding upon demand by him, have the right to bring an action on behalf of the corporation under such section. So that any stockholder, under said section, where the superintendent of banks has taken possession of the property and business of the bank for the purpose of liquidation, has a complete and adequate remedy to enjoin further proceedings in liquidation, which necessarily includes the proceedings of the superintendent in ascertaining the ·necessity of and enforcing double liability and determining the amount thereof, in case the facts did not warrant and the superintendent of banks has been guilty of an abuse of discretion or. fraud

in taking possession of the property and business of the bank for the purpose of liquidation.

The remedy under this section is exclusive and when the superintendent of banks has taken possession of a bank for the purpose of liquidation, neither the bank nor its stockholders can otherwise contest the authority or discretion of the superintendent of banks to proceed with the liquidation and as incidental thereto, to ascertain the necessity of enforcing double liability and determining the amount thereof.

For the reasons hereinbefore mentioned, the rulings of the trial court in rejecting evidence offered on behalf of the plaintiffs in error on the trial of this cause, tending to show that the assets of the bank at the time assessment was made, were insufficient to pay its debts and liabilities and that the superintendent had abused his discretion in making such assessment were correct.

The cases of State v Melarango, 31 OLR, 627; Anderson v State ex, 12 Abs, 161; State ex v Weinberger et, 37 OLR, · 564 (13 Abs 554), and State ex v Cole, 14 Abs, 464; are cited by the defendants as authority for their contention that the decision of the superintendent is not conclusive but may be contested by stockholders.

The only question in the Melarango case was whether the statute of limitations had run against the superintendent who had taken possession of the bank in 1921 and did not make his findings and determination of the necessity to collect the double liability until 1925. The court recognized the fact that the liability rested upon the determination and finding by the superintendent of the necessity to enforce such liability. No question of the conclusiveness of this finding and determination was raised in the case.

In the Anderson case, the only question involved was one of pleading. The superintendent had alleged insolvency of the bank in his petition, and the answer of the stockholders had denied this fact. A demurrer was filed to the answer, and of course the answer having denied an allegation of fact alleged in the petition, to-wit: insolvency, the court held there was an issue of fact alleged in the petition and denied by the answer, and that the sustaining of the demurrer was erroneous. The question of conclusiveness of the finding and determination of the necessity to enforce double liability was not presented or decided by this case.

In the Weinberger case, the Court of Appeals of Cuyahoga County held that·. the

stockholders' liability in Ohio was a primary liability, and expressly stated in the opinion that they were not deciding the question of whether the superintendent could determine the amount of liability, as that question was not before the court.

In the Cole case, decided by the Court of Appeals of Summit County, the only question presented to the court was whether or not it was necessary for the superintendent of banks to make a written record of his finding and determination of the necessity to enforce stock liability. The question of the conclusiveness of the finding and determination of necessity to enforce the liability was not presented in the case.

3. WHEN THE SUPERINTENDENT HAS DETERMINED UPON AND MADE AN ASSESSMENT OF 100% OF THE LIABILITY, IS AN ACTION TO RECOVER THE SAME AN ACTION AT LAW OR AN ACTION IN EQUITY?

In the case of Kennedy v Gibson, 75 U. S., 476, it was held that where the whole amount is sought to be recovered, the proceeding must be at law. This holding has been uniformly followed in the federal courts and also in the courts of other states, and we approve it as applying to an action to recover the double liability of stockholders, under the Constitution and the Ohio Banking Act.

4. MAY STOCKHOLDERS AGAINST WHOM SEVERAL JUDGMENTS ARE SOUGHT, BE JOINED AS PARTIES DEFENDANT IN SUCH AN ACTION?

In the case of Ach v State, 23669, in the Ohio Bar Association Reports under date of August 1, 1932, Vol. 5, No. 18 at page 221, the superintendent of banks filed a suit against the stockholders of The Security Savings Bank, of Akron, alleging the amount of outstanding capital stock and number of shares in which it was divided and the par value, stating that it would be necessary to collect the full amount of the double liability, and then set forth a list of stockholders, with a statement of the stock held by each and the amount due from each, and an allegation of a demand made on each of the stockholders for the amount of their liability, and praying judgment against each of the defendants for the amount set opposite their respective names.

Demurrer was filed to the petition on the following grounds: First, misjoinder of parties defendant; second, that several causes of action were improperly joined; third, that several causes of action against several defendants were improperly joined. The Common Pleas Court overruled the demurrer and entered judgment against the defendant Ach. On error, the Court of Appeals affirmed the judgment of the Common Pleas Court. The defendant Ach then filed a motion to certify the record to the Supreme Court, which motion was overruled by the Supreme Court, as reported in **Ohio Law Abstract** in its issue of October 22, 1932.

Following this decision, we hold that stockholders against whom separate judgments are sought, are properly joined as defendants in the same action. If separate actions were required to be brought against each stockholder, the expenses and costs of both the superintendent and the defendants would be greatly increased, the records of the court encumbered with duplicate pleadings, the time of recovery would be delayed, and no useful purpose whatever served; and even if the joining of defendants were erroneous, it was not in any way prejudicial to any of them.

5. MAY SERVICE OF SUMMONS BE MADE ON A STOCKHOLDER DEFENDANT IN A COUNTY OTHER THAN THE COUNTY IN WHICH SUCH ACTION IS BROUGHT?

Sec 11255, GC, provides that any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved.

Sec 11282, GC, provides that when an action is rightly brought in any county according to the provisions of the next preceding chapter, a summons may be issued to any other county against one or more defendants, at the plaintiff's request.

Sec 710-14, GC, expressly confers power upon the superintendent of banks to prosecute actions under the Banking Act, in the Court of Common Pleas of Franklin County, or in any other county in which the defendant or one or more of the defendants reside or may be found, and that in all such suits and proceedings, the writ may be sent by mail to the sheriff of any county and returned by him in like manner.

6. IS IT NECESSARY TO JOIN ALL STOCKHOLDERS AS PARTIES DEFENDANT IN SUCH AN ACTION?

As the liability assessed against stockholders is 100%, the amount of recovery

against any stockholder would not be increased or decreased by the amount of the recovery against any other stockholder, and consequently a defendant stockholder could not be prejudiced in any way by the failure of the superintendent to make all stockholders parties defendant to an action or to set forth the amounts due from stockholders who are not parties to the action, and in such an action the superintendent is not required to join all stockholders as parties defendant or to make any allegations with reference to the amounts due from stockholders who are not joined as parties defendant in the action.

## 7. IN THE PETITION IN SUCH AN ACTION IS IT NECESSARY TO SEPARATELY STATE AND NUMBER THE CAUSES OF ACTION?

The only purpose in separately stating and numbering causes of action, is to advise the defendant of the nature of the claim against him. The petition in this case fully advises each defendant of the nature of the claim against him in language that cannot be misunderstood and the separately stating and numbering of causes of. action would not serve any useful purpose, but on the other hand would cause the records of the courts to be encumbered with repetitious allegations, greatly increasing the costs in the action. We therefore hold that it is not necessary to separately state and number the causes of action.

## 8. DOES A PETITION IN SUCH AN ACTION CONTAINING THE ALLEGATIONS HEREINBEFORE SET FORTH, STATE A CAUSE OF ACTION?

It is contended by the plaintiffs in error that in addition to the claimed defects in the petition which are hereinbefore treated, the petition is defective in that it fails to allege the data upon which Fulton, as such superintendent of banks, ascertained and found that it would be necessary in order to pay the debts of the bank to enforce individual liability of the stockholders and the amount of such liability may make such decision on data which is satisfactory to him and that his decision is final and cannot be controverted, so that this contention is without merit.

The plaintiffs in error further contend that there is no allegation that the superintendent determined that it was necessary to enforce the liability to pay the debts or the amount of the assessment necessary for such purpose. This contention is apparently based on two subdivisions of the syllabus in the case of Kennedy v Gibson, supra, as follows:

"It is for the comptroller of the currency to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability and how much should be collected.

"This action on his part is indispensable and must be distinctly averred in all such cases."

Under the National Banking Act, the receiver acts as agent for the comptroller in bringing the action, and consequently it is necessary for him to aver in the petition, the determination of the comptroller that it is necessary to institute proceedings against the stockholders, to enforce their personal liability, and how much shall be collected. Under the Ohio Banking Act, the superintendent of banks exercises authority in his own right similar to the authority exercised by the comptroller under the National Banking Act.

The allegation in the petition in the case at bar is to the effect that Fulton as superintendent of banks, ascertained and found that the assets of said bank were and would be insufficient to pay the debts and liabilities of said bank, which is a proper pleading of the condition precedent to the enforcement of the liability under the provisions of §710-75, GC.

The petition further alleges that said Fulton demanded payment of the super-added or double liability provided in the constitution and laws of the state, from the defendants, and further alleges the amount due from each of them on such liability.

The allegations of the demand for such payment, together with the filing of suit for same, necessarily implies without further averment, that he had decided upon data satisfactory to him that it was necessary to enforce the full amount of the liability, and consequently the petition is not defective in the respect mentioned.

## 9. ARE THE FACTS HERETOFORE SET FORTH SUFFICIENT TO SUSTAIN THE ALLEGATIONS OF THE PETITION?

The undisputed facts from the pleadings, stipulations and the evidence, are that Fulton as superintendent of banks took possession of the property and business of the bank for the purpose of liquidation on August 17, 1931, and that prior to making an assessment against stockholders for their

super-added liability on December 15, 1931, that he, taking into consideration the depreciation of all assets in the bank in the way of securities, finally determined that the assets would not be sufficient to pay the liabilities, and the assessment was then levied which was for full 100% double liability. This necessarily implies a decision on his part on data satisfactory to him that a 100% assessment was necessary to pay the debts.

In the case of Bowden v Johnson (N. J., 1883), 2 S. Ct., 246, 107 U. S., 251, it was held that a letter addressed to the receiver of a national bank and signed by the Comptroller of the Currency directing the receiver to institute legal proceedings to enforce, against every stockholder of the bank owning stock at the time the bank suspended, his or her personal liability, as such a stockholder, under the statute is sufficient evidence that the comptroller desired, before the suit was brought, that it was necessary to enforce personal liability of the stockholders; and in this case a 100% assessment was sustained by the court on the evidence mentioned.

The evidence in this case, both as to the decision of the superintendent of banks and the amount of the assessment required to be made, is much clearer than in the case cited, and is sufficient to sustain the judgment rendered.

10. ARE THE STOCKHOLDERS OF A BANK LIABLE ON THEIR SUPER-ADDED LIABILITY FOR THE DEBTS OF THE BANK CONTRACTED PRIOR TO JANUARY 1, 1913, THE EFFECTIVE DATE OF THE AMENDMENT TO THE CONSTITUTION?

Under the provisions of §II of Article XIII of the Constitution reserving power in the state to alter or repeal laws relating to corporations, the imposing of double liability on stockholders of banking corporations under the provisions of §III of Article XIII had the effect of imposing liability on such stockholders for all the debts and obligations of the bank, no matter when contracted.

11. ARE STOCKHOLDERS WHO ACQUIRED SOME OF THEIR STOCK HOLDINGS IN A BANK PRIOR TO JANUARY 1, 1913, THE EFFECTIVE DATE OF THE CONSTITUTIONAL AMENDMENT IMPOSING DOUBLE LIABILITY AND HAVE SINCE EXCHANGED THEIR CERTIFICATES OF SUCH STOCK FOR CERTIFICATES OF A DATE SUBSEQUENT TO SAID DATE, AND RECEIVED STOCK DIVIDENDS THEREON, LIABLE IN ANY RESPECT FOR ANY OF THE DEBTS OR OBLIGATIONS OF THE BANK AT THE TIME IT CLOSED ON AUGUST 17, 1931?

The answer to the question immediately preceding, answers this question. Furthermore, the stockholders who exchanged their certificates and received stock dividends thereon subsequent to January 1, 1931, by their own actions subjected themselves to the provisions of §II, Article XIII of the Constitution, and having received the benefits, are estopped to deny the burdens.

12. IS FRAUD IN A BANK IN INDUCING A PERSON TO ACQUIRE STOCK IN AND BECOME A STOCKHOLDER IN SUCH BANK, AVAILABLE AS A DEFENSE TO SUCH PERSON IN AN ACTION TO ENFORCE THE DOUBLE LIABILITY OF STOCKHOLDERS?

In the case of Wehby v Spurway (Arizona, 1926), 246 Pac., 759, certiorari denied (1926) 47 S. Ct., 112, it was held that one whose name appears with his consent on stock book of national bank as a stockholder within sixty days prior to the failure of the bank, is liable to creditors for assessment, though stock purchase was induced by fraud.

Other cases in point will be found in 12 U. S. Code Annotated, p. 141.

Following this decision, we hold that such fraud is no defense in an action to enforce double liability.

Finding no error in the finding and judgment of the lower court, the judgment will be affirmed.

CROW, PJ, and KLINGER, J, concur.