## ERIE MOTOR FREIGHT, INC v TERMINAL INSURANCE AGENCY CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13589.   Decided May 14, 1934

Garfield, Cross, Daoust, Baldwin & Vrooman, Cleveland, for plaintiff in error.

Price & Price, Cleveland, for defendant in error.

## OPINION

By McGILL, J.

In the Municipal Court of Cleveland the Erie Motor Freight, Inc., brought an action grounded in fraud for the recovery of a premium in the sum of $1170.63, which it had paid to The Terminal Insurance Agency Company for a policy of automobile liability and property damage insurance in the Independence Indemnity Company. The court below rendered judgment for the defendant and the cause is brought to this court on error proceedings to reverse that judgment.

From the record in this case it appears that the Erie Motor Freight, Inc., is engaged in the interstate transportation of freight. The Terminal Insurance Agency Company is an Ohio corporation which acts as an insurance broker and places insurance in various companies. On or about March 24, 1933, the defendant below caused a policy of insurance to be issued to the plaintiff in the Independence Indemnity Company of Philadelphia. The plaintiff paid the defendant company the sum of $1170.63 premium, which the defendant admitted was received by it.

The record discloses that on October 31st, 1932, the Independence Indemnity Company executed a bill of sale to the International Re-Insurance Corporation, by virtue of which bill of sale all of the assets and property of the Independence Indemnity Company of every kind and character was conveyed to the International Re-Insurance Corporation. Not only had all of the assets of the Independence Indemnity Company been sold in 1932, but also the President of the agency company knew that fact about November 1, 1932.

In the bill of exceptions, in connection with the cross-examination of the President of the Agency Company, appears the following:

"Q. Did you have any knowledge that all of the assets of the Independence Indemnity Company had been sold to the International Re-Insurance Corporation?

A. Yes.

Q. You did?

A. Certainly.

Q. Now, when did you get that knowledge?

A. I would say the first of November.

Q. First of November, what year?

A. Nineteen thirty-two.

Q. And how did you get it?

A. By telegraphic communication from the home office.

Q. By what?

A. By telegraphic communication from the home office.

Q. And they notified you then that they had sold all the property of the company— that is, of the International—I mean of the Independence Indemnity Company—that all of the property of that company had been sold to the International Re-Insurance Corporation? Is that correct?

A. Well, I think the way they put it was that the company had been taken over entirely by the International."

In addition to the knowledge of the President of the Agency Company that the assets of the Independence Indemnity Company had been sold, it appears from the record that the license of the Agency Company to issue insurance in the name of the Independence Indemnity Company had been cancelled in November, 1932.

The Chief Examiner from the Division of Insurance of Ohio testified, among other things, as follows:

"Q. Have you examined the records of your office with regard to whether the Terminal Insurance Agency of Cleveland took out a license to represent the International—the Independence Indemnity Company in 1933?

A. I have as to whether or not a license was issued to that agency by the Division of Insurance.

Q. What's that?

A. I have as to whether or not the Division of Insurance issued a license.

Q. Was a license issued to the Terminal Insurance Agency of Cleveland for 1933?

A. No, sir."

The record discloses that the insurance companies requested licenses for the agents; that in November, 1932, the license of this agency company was cancelled; and that this agency company had no license issued

in 1933 to sell or issue insurance in the name of the Independence Indemnity Company.

It appears that at the time the bill of sale was given by which the assets of the Independence Indemnity Company were transferred, an agreement was entered into between the Independence Indemnity Company and the International Re-Insurance Corporation. By virtue of this agreement the International Re-Insurance Corporation undertook and agreed to re-insure all the liabilities of the Independence Indemnity Company. The defendant sought to justify the issuance of this policy by virtue of that agreement. We think the issuance of this policy in a company which had sold all its assets, by an agency company whose license had been cancelled as to said company, cannot be justified by this re-insurance agreement.

It is clear from the record that the President of the Terminal Insurance Agency Company knew in November, 1932, that all of the assets of the Independence Indemnity Company had been sold and transferred. It further appears that in November, 1932, the license of the agency company was cancelled as to the right to issue insurance in the name of the Independence Indemnity Company. In addition no license had been issued for 1933. Notwithstanding these facts, in March of 1933, the Agency Company issued this policy in the name of the Independence Indemnity Company and received the premium therefor.

It is clear from this record that the plaintiff paid for protection which it did not get. The plaintiff was entitled to a policy in a company which had assets and which had on deposit with the State of Ohio the required amount of security.

Where an insurance broker or agency issues a policy of insurance in the name of a certain insurance company, there is an implied warranty to the insured that the company is in existence and that it is a going concern. Even if this company could be said to be in existence, the plain fact is that all of its assets and property of every kind and nature had been sold and disposed of six months before this policy was issued. By its own act, it became disqualified to issue thereafter policies of insurance.

It was also urged that the policy had been deposited with the Public Utilities Commission of Ohio, and the court below seemed to take the view that the company was entitled to do business in Ohio because the policy had been accepted by the Public

Utilities Commission. We think that the fact that this policy was later deposited with the Public Utilities Commission does not justify the issuing of this policy.

The conceded facts in this case are so clear that reasonable minds could not come to different conclusions and accordingly the judgment is reversed as contrary to law and final judgment will be entered for the plaintiff in error in the sum of $1170.63 with interest from the date of the payment of this premium.

LIEGHLEY, PJ, and LEVINE, J, concur in judgment.