## SQUIRE v ABBOTT et

Ohio Common Pleas, Cuyahoga Co

No 428882. Decided March 12, 1937

## OPINION

By HURD, J.

This is a suit brought by the Superintendent of Banks of the State of Ohio against the stockholders of the Union Trust Company, Cleveland, Ohio, for superadded stock liability under the provisions of **Article XIII, §3, of the Constitution of the State of Ohio** and the statutes thereunder enacted. The action comes before this court at this time for final hearing, upon the issues joined. This court has heretofore, on the 6th day of April, 1936, ruled on numerous motions and demurrers filed herein involving separate propositions of law raised by said motions and demurrers (see **Squire, Supt. v Abbott et, 5 Ohio Opinions 352**).

We shall not attempt to review at this time these earlier rulings except insofar as it may be necessary so to do in applying legal principles to the facts developed by the testimony but shall attempt to confine this opinion to a discussion of new issues now presented for final determination.

The fundamental question presented by the issues is whether or not the defendants, the stockholders of the Union Trust Company, shall answer for the superadded liability assessed against them by the Superintendent of Banks, who, it is conceded, is now and has been since June 15th, 1933, in charge of the business and property of said bank for purposes of liquidation. One of the serious issues raised in this case is without doubt that issue raised by the defendants who charge in their answers that the Superintendent of Banks, in his determination that the assets of the Union Trust Company would be insufficient to pay the liabilities of such bank, was guilty of an abuse of discretion in that the bank is now and was then in fact solvent, and that the Superintendent wrongfully, unreasonably, arbitrarily, unjustly, illegally and oppressively found the contrary to be true.

This charge, if true, would constitute a fraud, and the court should by reason of such fraud invalidate the assessment. It is a fundamental proposition of law that "fraud vitiates everything that it touches," and if this charge is substantiated the court should not only invalidate the superadded liability assessment against these defendants who have answered, but against all defendants.

Another serious issue raised by the answers of certain defendants is that the Superintendent was guilty of an abuse of discretion in that the statement of condition, upon which such determination was predicated, contained an item of loans due to the Reconstruction Finance Corporation for the security of which it is conceded the assets of the Union Trust Company were turned over to said Reconstruction Finance Corporation. The defendants complained that such action being without the consent and approval of the directors and stockholders was without warrant of law, a violation of their constitutional rights, and that by reason thereof the assessment of superadded liability should be set aside by this court.

Other issues are presented, some of more or less general importance, and some involving facts peculiar to particular defendants. We shall attempt in this opinion to discuss questions only of general importance as we are filing contemporaneously herewith separate findings of fact and conclusions of law wherein the cases of all defendants are separately considered and determined.

Coming now to a consideration of the allegations charging that the bank was in

224

fact solvent and that the Superintendent abused his discretion in that he acted arbitrarily, unreasonably and inequitably, we deem it germane to call attention to the theory of law under which such charges were entertained by the court and to discuss briefly supporting authorities.

It has been held that the determination of the Superintendent of Banks in a case such as this is not subject to attack in a suit to enforce the superadded liability; that the action of the Superintendent of Banks is in the nature of an "official act" or a "public act" which cannot become an issuable fact in the absence of fraud, or wilful act on his part amounting to a fraud. In other words mere error of judgment is not a defense.

**Baumgardner v State ex, 48 Oh Ap 5, (16 Abs 671).**

**State ex Fulton v Murfee, Blossom & Co., 4 O.O. 443, (20 Abs 176).**

**Trustees of Ohio Wesleyan University v State ex Fulton, 50 Oh Ap 51, (18 Abs 487).**

Collier v Smith, (Tex. Civil App.), 169 SW 1108;

Chaney v Sherman, 129 N. Y. 993;

Thompson v Bank Commissioner, 119 Okla. 166;

Davis v Moore, 197 SW 295;

Broderick v American General Corp., 71 Fed. 2nd. 864;

Donoghey v Mason, 190 Ark. 123;

Ames v American Nat'l Bank (Va.), 176 SE 204;

**State ex v Weinberger, 44 Oh Ap 264, (13 Abs 554); page 269 of the opinion.**

**Bailey et v State of Ohio ex Squire, Court of Appeals of Cuyahoga County, Case No. 15187, (22 Abs 145)** (involving claims against stockholders of the Guardian Trust Co. of Cleveland for superadded liability).

In the latter case Lieghley, Presiding Judge, in a well considered and logically reasoned memorandum opinion said:—

"A decision of the issue of whether or not the finding or ascertainment of the Superintendent as to insolvency is conclusive determines the questions of the sufficiency of the petition and the demurrer to the interrogatories, and the demand for a jury to try the issue of insolvency. The defendants deny the power or the authority of the Legislature to repose the duty and responsibility in a superintendent to make a final determination of the conditions of the bank and reserving only to the court the responsibility of deciding who are stockholders and how much each owes.

"Corporations are creatures of the state. Corporations organized to receive money on deposit are imbued with a public interest. The state is the source of the right to incorporate for such purpose. It is not in dispute that the state may regulate such institutions as going concerns. It seems that the right to legally direct and control such institutions being conceded, the right to manage the liquidation of such institutions on becoming insolvent naturally follows. The state has created a state agency in the form of a banking department manned by and headed with the Superintendent of Banks especially and specifically empowered to regulate and liquidate. In the absence of a claim substantially made that the Superintendent abused his discretion in making such ascertainment of the condition of any bank—and such claim has not been made herein—it is my conclusion that such finding of the Superintendent is conclusive and final."

This court in an earlier opinion reported in **5 Ohio Opinions, page 352, Squire v Abbott,** said:

"In such action the application cannot be defeated by showing that the Superintendent erred in his determination and that the assets of the bank were in excess of its liabilities at the time it failed to meet its obligations, at the time it was taken over by the Superintendent for liquidation, or at the time the action was filed."

In this same opinion this court also held that the allegation contained in an answer that the determination of the Superintendent was "wrongful, unreasonable, arbitrary, unjust, illegal, oppressive and an abuse of discretion" constituted a mere legal conclusion of the pleader and was without substance unless facts were pleaded which gave rise to the conclusion. At that time this court also said:

"It is our opinion that the facts must be pleaded which give rise to the conclusions stated and that any such allegation without the necessary factual predicate is a mere legal conclusion of the pleader."

and motions were granted striking such allegations from the petitions. After a careful examination of the authorities we see no reason to reverse this ruling and we reaffirm the same on the authority of cases therein cited.

**Royal Insurance Co. v Ries, 80 Oh St 272;**

Stricker v Braden, 31 N.P. (N.S.) 329.

The authority on which this court permitted the allegations of abuse of discretion on the ground of arbitrary, unreasonable, inequitable, illegal and oppressive acts and conduct is contained in the case of Trustees of Ohio Wesleyan University v State ex Fulton, 3 Ohio Opinions 436; 50 Oh Ap 51. The 6th and 7th syllabi of that case are as follows:

"6. When a bank is taken over for liquidation the Superintendent of Banks has the incidental right under §§710-75 and 710-94 GC, to ascertain that the assets of the bank will be insufficient to pay its debts and liabilities, and then to enforce the total liability of the stockholders, and such determination cannot be collaterally attacked in the absence of wilful act and fraud. (Baumgardner v State ex Fulton, Superintendent of Banks, 48 Oh Ap 5, approved and followed)."

"7. In an action by the Superintendent of Banks against stockholders of an alleged insolvent bank to enforce their double liability, averments by the defendants that the bank is and was solvent and that the Superintendent wrongfully, unreasonably, arbitrarily, unjustly, illegally, and oppressively found to the contrary, if proven, would constitute a fraud and present an issue of abuse of discretion on the part of the Superintendent of Banks, thus making it improper for the court to direct a verdict for the plaintiff, although the defendants admit all other material facts of the petition."

It will be noted that the law of the case as set forth in paragraph 6 of the syllabus is in harmony with the authorities above cited. Analyzing paragraph 7 of the syllabus it will be noted that while the words "unreasonably, arbitrarily, unjustly, illegally and opprssively" are conclusions, nevertheless these conclusions are founded upon factual allegations, namely, that "the bank is and was solvent," and that the Superintendent "found to the contrary," the court saying that such averments "if proven would constitute a fraud." On page 70 of the opinion the court further say:

"This constitutes an affirmative defense and the burden of proof would be upon the defendants to establish it by a preponderance of the evidence."

The court further say:
"On this issue any evidence presented on the question of solvency and insolvency of the bank would be admissible only insofar as it bore upon the question of abuse of discretion."

The defendants in argument, oral and written, have contended that the act of the Superintendent. in making his ascertainment and determination is in the nature of a judicial act upon which they are entitled to have judicial review as a matter of right. With this contention we do not agree. We have heretofore held in this case that the acts required of the Superintendent of Banks under §710-75 GC are of an "executive" rather than of a "judicial" nature—see syllabus 17 of Squire v Abbott, 5 Ohio Opinions 352, where as authority we cited Chenault v Gray, 13 Abs 600; Baumgardner v State ex Fulton, 48 Oh Ap 5; Snider v Banking & Trust Co., 124 Oh St 375.

To these authorities we now add Broderick v Rosner, 294 U. S. 629, wherein Mr. Justice Brandies delivered the opinion of the court, holding among other things that a similar determination by the Superintendent of Banks of New York under an act similar to our Ohio statute was an "executive act" of a statutory officer, rather than a "judicial act."

In view of these holdings the only theory on which the court could and did admit testimony showing abuse of discretion was under the allegation heretofore referred to, namely, that the bank was in fact solvent, that the Superintendent arbitrarily, illegally, wrongfully, and unjustly found to the contrary; that such action on his part would constitute fraud, which would necessarily invalidate the assessment.

The defendants in this case who filed answers containing allegations not necessarily "in haec verbis" but similar in substance, particularly with respect to the factual allegation of solvency, were allowed the widest latitude to present evidence in support of their charges of fraud.

Upon the trial of the case which was somewhat extended by reason of the great number of defendants and intricate details involved in a presentation of the facts, the testimony of the plaintiff consisted of the examination of Ira J. Fulton who was the Superintendent of Banks of the State of Ohio at the time the assessment was made and the person who made the ascertainment and determination that the superadded liability provided for by the Constitution and laws of the state should be enforced against the defendants, Oscar L.

Cox, Special Deputy Superintendent of Banks in charge of the liquidation of The Union Trust Company, and the testimony of two employees of the liquidator who testified as to the number and names of stockholders, the number of shares owned by each and the payments made by them in respect of super-added liability.

In addition to the testimony of said witnesses there were presented and admitted in evidence certain documentary exhibits. For the purpose of this opinion we believe it helpful to include a copy of the letter of the Superintendent of Banks dated July 30, 1934, marked "Plaintiff's Exhibit D" advising the three deputy superintendents of banks in charge of the liquidation of the Union Trust Company of Cleveland, of the ascertainment by the Superintendent of Banks that the assets of the bank were insufficient to pay its debts and liabilities and of the determination of an assessment in the amount of 100% to be issued and levied upon the stockholders. A copy of said letter reads as follows:

"STATE OF OHIO

DIVISION OF BANKS

Columbus.

July 30, 1934.

I. J. Fulton
Superintendent of Banks

A. C. Krug,
Deputy Superintendent.

Messrs. Oscar L. Cox
C. W. Miller
J. C. Van Pelt
Special Deputy Superintendent of Banks

The Union Trust Company

Cleveland, Ohio

Gentlemen:

"You are hereby advised that I have ascertained that the assets of The Union Trust Company, Cleveland, Ohio, will be insufficient to pay its debts and liabilities, said liabilities being in excess of the liquidation value of said assets to the extent of approximately Twenty-six Million Dollars ($26,000,000.00).

"I am therefore making an assessment in the amount of One Hundred Per Centum (100%) to be issued to and levied upon the stockholders of said The Union Trust Company, Cleveland, Ohio, in the manner provided in §710-75 GC.

"You are therefore ordered to issue proper notice of such assessment over my signature on the 1st day of August, A. D., 1934, directed to each of said stockholders.

"The capital stock of The Union Trust Company, Cleveland, Ohio, is Twenty-two Million, Eight Hundred Fifty Thousand Dollars ($22,850,000.00) divided into Nine Hundred Fourteen Thousand (914,000) shares of a par value of Twenty-five Dollars ($25.00) each.

Very truly yours,

I. J. FULTON,

IJF:EA Superintendent of Banks."

The testimony offered by the defendants consisted mainly of the cross-examination of Ira J. Fulton, Superintendent of Banks, and of Oscar L. Cox, Special Deputy in charge of the liquidation of the Union Trust Company in Cleveland, and in the testimony of Ernest N. Wagley, an employee of the liquidator in charge of investments, and of Harry F. Burmester an employee of the liquidator in charge of commercial and collateral loans and stock liability, Harry E. Hills, an employee of the liquidator in charge of real estate and mortgage loans, Judson T. Pierce, an employee of the liquidator in charge of the real property (excepting therefrom the Union Trust Building and Western Reserve Building) as secretary of the Union Properties Company, a wholly owned subsidiary, and Morris S. Holliday, an employee of the liquidator in charge of the Union Trust Building and the Western Reserve Building, in his capacity as president of the Union-Lennox Company, a wholly owned subsidiary.

There was also introduced in evidence on behalf of the defendants, Grace Olmsted's Exhibit "A", which was identified as a condensed statement of the Union Trust Company as of January 31st, 1934, showing book values and appraised values as of that date. The testimony developed that it was this statement which formed the basis for the final determination of the Superintendent that the liabilities exceeded the assets to the extent of approximately $26,000,000. By reason of the importance of this statement we deem it proper to include the same as a part of this opinion. The statement follows:

CONDENSED STATEMENT OF THE UNION TRUST COMPANY

CLEVELAND, OHIO

AS OF JANUARY 31st, 1934

Estimated Liquidating Deficit

Discount Basis*

| Before Appraisal | | | Undivided Profits | Assets |
|---|---|---|---|---|
| Assets | Book Value | Debit | Credit | After Appraisal |
| Cash | $ 460,719.24 | | | $ 460,719.24 |
| Investments | 23,092,586.78 | $ 10,222,837.38 | | 12,869,749.40 |
| Collateral Loans | 46,110,170.71 | 17,442,463.22 | | 28,667,707.49 |
| Unsecured Loans | 9,285,870.42 | 3,666,142.30 | | 5,619,728.12 |
| Real Estate Loans, Western Mortgage Co. Notes | 60,827,627.42 | 10,859,319.90 | | 49,968,307.52 |
| Union Lennox Co. | 11,464,933.76 | 5,907,339.85 | | 5,557,593.91 |
| Branch Banking House & Lots | 518,370.77 | 505,411.50 | | 12,959.27 |
| P. A. Frye Company | 7,604,709.46 | 3,946,814.57 | | 3,657,894.89 |
| Cleveland-Akron Bag Co. Prop. | 449,106.38 | 56,138.30 | | 392,968.08 |
| Other Real Estate | 1,725,581.53 | 1,325,150.01 | | 400,431.52 |
| Foreign Department | 5,496,825.91 | 1,932,256.33 | | 3,564,569.58 |
| Overdrafts | 269.12 | | | |
| Cash Items | 3,916.64 | | | |
| Return Checks | 112.71 | | | |
| Accounts Receivable | 85,709.45 | | | |
| Advances, Corporate Trust Dept. | 70,373.54 | | | |
| Advances, Estates Trust Dept. | 58,941.86 | | | |
| Furniture and Fixtures | 40,826.59 | | | |
| Suspense Part. Pool No. 1 | 101,646.70 | | | |
| Our Interest Part. Pool No. 1 | 136,183.14 | 240,681.31 | | 257,298.44 |
| 2½% of Cash used in original computation | | 11,517.98 | | R 11,517.98 |
| | $167,534,482.13 | $ 56,116,072.65 | | $111,418,409.48 |

Liabilities

| | | | | |
|---|---|---|---|---|
| Bills Payable, Regular | 36,209,418.98 | | | 36,209,418.98 |
| Bills Payable W. M. Co. | 20,263,544.49 | | | 20,263,544.49 |
| Claims Unfiled | 6,101,703.23 | | | 6,101,703.23 |
| Claims filed | 67,607,797.11 | | | 67,607,797.11 |
| Non-book Liabilities (Est'd) | 6,743,273.00 | | | 6,743,273.00 |
| Other Liabilities | 421,220.41 | | | 421,220.41 |
| Capital | 22,850,000.00 | | $22,850,000.00 | |
| Surplus | 12,150,000.00 | | 12,150,000.00 | |
| Undivided Profit | | 4,812,475.09 | | -0- |
| | $172,346,957.22 | $ 60,928,547.74 | $35,000,000.00 | $137,346,957.22 |

Assets at Appraised Value 111,418,409.48

 $25,928,547.74

DEFENDANT'S EXHIBIT (Grace Olmsted) A

228

In addition to the condensed statement as of January 31, 1934, the court admitted in evidence other statements of condition and certain appraisals of assets, one such statement, namely, that of July 31, 1933, being prior to the date of the determination made herein and certain other statements and appraisals subsequent to January 31st, and showing condition as of September 5, 1934, November 9, 1935, December 31, 1935, and September 30, 1936, respectively.

The subsequent statements and appraisals were admitted in evidence over the objection of the plaintiff herein and the court admitted such statements insofar as such statements and such evidence might have a bearing on the question of solvency or insolvency at the time the determination was made and then only insofar as the question of solvency would bear upon the question of abuse of discretion claimed against the Superintendent of Banks. It was the opinion of the court that the Superintendent could not be held responsible for lack of ability accurately to forecast the future but that such statements would be admissible only insofar as they might be evidence bearing upon the claim of the defendants that the bank was in fact solvent at the time of the determination and that the Superintendent unjustly, illegally, and arbitrarily found to the contrary.

After a careful and complete review of all the evidence in the case, oral as well as documentary, we reach the conclusion which appears to us to be clearly inevitable that the defendants have failed to establish the affirmative defense assumed by them in their answers, namely, that the Union Trust Company is now or was solvent at the time the Superintendent ascertained that the assets were insufficient to pay its debts and liabilities.

The defendants having made the allegations of fact that the bank was solvent and that the Superintendent wrongfully, arbitrarily, unjustly, illegally and oppressively found to the contrary have assumed the burden of proof of this affirmative defense which, if proven, would constitute fraud on the part of the Superintendent of Banks.

The court cannot presume fraud. The defendants must prove it. In fact it is a general proposition of law well settled that the acts of public officers in their official capacity are presumed to be valid, until the contrary is shown.

It is another rule of law with respect to the allegation of fraud that the evidence sustaining the charge should be clear and convincing.

It was the duty of the defendants to prove their allegation by a preponderance of the evidence. This they have . completely failed to do. A reading of the record discloses that the defendants did not present any affirmative testimony showing or tending to show the solvency of the bank as of January 31, 1934.

The defendants presumably could have called witnesses who would be entirely disinterested and who could testify with respect to the value of the assets as they believed these assets to be as of that date. The door was completely open to the defendants, the court having held all such testimony admissible. They did not avail themselves of this opportunity. They rested their case upon their cross-examination of the Superintendent of Banks, the deputy superintendent in charge of liquidation and the direct examination of certain employees of the bank, thereby making said employees their witnesses and being bound by their testimony.

An analysis of the testimony of these witnesses does not show evidence justifying a conclusion of solvency, from the time the business and property of the bank was taken over for liquidation by the Superintendent to September 30, 1936, the date of the latest statement in evidence. There was evidence tending to show that appraisals of some if not all of the assets of the Union Trust Company had been made by the Reconstruction Finance Corporation and the National City Bank of Cleveland, and also that an appraisal of a substantial part of the assets had been made by a stockholders' committee,—all of these examinations and appraisals at or near the time of the ascertainment and determination made by the Superintendent of Banks; in fact the deputy superintendent of banks testified that he had knowledge of and had examined these appraisals and that the appraisal made by the National City Bank was in fact lower than the appraisals made by the Superintendent of Banks. However, no such testimony of other appraisals was offered by the defendants. The defendants in briefs and in oral argument criticized the appraisals and the method of appraisal of one of the important assets, namely, the Union Trust Building. They argued that it was not correctly and properly appraised and yet no evidence was pre-

sented by them of an affirmative nature tending to show what that appraisal should have been as of January 31, 1934. As stated hereafter in this opinion even if the real value as of that date were greatly in excess of the value found by the Superintendent in his ascertainment of the value of assets, nevertheless the bank would still be insolvent by many millions of dollars, unless a substantially higher valuation were placed upon other assets. In the absence of testimony of a positive nature controverting the testimony of the plaintiff, the court arrives at the conclusion that with the possible exception of the Union Trust Building the appraisals made were on the basis of reasonably sound values as of January 31, 1934, under market conditions then existing.

It has been held that the true value of an asset is that price at which a seller, who is not obliged to sell, will enter into a contract of sale, with a buyer who is willing, but not obliged, to buy. Bank v Hines, 3 Oh St 1; State v Halliday, 61 Oh St 352; Tax Commission v Surface Combustion Co., 52 Oh Ap 120. Neither by this test nor by any other test have the defendants proven that the bank was in fact solvent and that the Superintendent improperly and arbitrarily found the contrary to be true.

Certainly there has been no proof of solvency at the time the determination was made by the Superintendent of Banks. In fact from a complete examination of the record we are constrained to conclude that no evidence has been presented showing or tending to show that the Union Trust Company was solvent in January, 1934, or at any time during the period under examination.

Having arrived at the conclusion from all the evidence that the Superintendent of Banks did not err in his ascertainment that the assets of the bank were insufficient to pay its debts and liabilities it would appear to us that we have disposed of the major question of fact raised by the pleadings and thereby we have disposed of the question of the claimed abuse of discretion in connection therewith. In other words the question of solvency would seem to be a controlling factor. It was the allegation of fact made by the defendants forming a necessary predicate to the conclusion that the action of the superintendent was wrongful, unreasonable, arbitrary, unjust, illegal and oppressive, constituting an abuse of discretion under the authority of the case of Trustees of Ohio Wesleyan University v State ex Fulton, Superintendent of Banks, supra.

Very learned and very able counsel representing certain defendants have argued that the Superintendent of Banks exercised "his power of ascertaining whether the assets would be sufficient to pay the debts and obligations of the bank in an arbitrary, unreasonable and inequitable manner." It would appear to the court upon a careful examination of the briefs that the question of solvency is avoided by these certain defendants. The attack has been made upon the "methods" employed by the Superintendent of Banks, claiming that his methods of appraisal were arbitrary, unreasonable and inequitable in that he wholly disregarded factors having a material bearing upon the necessity for the assessment; that his determination of "estimated liquidating values" of the assets of the bank was not the result of any actual appraisal of its assets, but a "wholly speculative estimate obtained by applying arbitrary rule of thumb" methods to groups of assets on a wholesale basis; that no such ascertainment was in fact made as is required by law; in short that the manner in which such ascertainment was made constituted an arbitrary, unreasonable and inequitable abuse of the discretionary power conferred upon him by law.

These defendants argue that the statutory requirement that there be an ascertainment of the necessity for the assessment clearly carries with it the requirement that such ascertainment be carefully and conscientiously made; that the necessity for such ascertainment be determined with a reasonable degree of certainty. They argue further that it was clearly never the intention of the Legislature in enacting §710-75 GC to authorize the Superintendent of Banks to engage in a "guessing contest," to assess double liability on the basis of wholly speculative estimates of liquidating values obtained by applying the arbitrary rule of thumb methods of appraisal to assets on a wholesale basis.

While we are of the opinion that the question of solvency was the primary issue of fact raised by the pleadings, nevertheless, it appears that during the course of the trial on this issue evidence was admitted showing and tending to show certain facts with relation to the method and manner of examination and appraisal of assets, employed by the Superintendent of Banks in reaching his ascertainment that the assets of the bank were not sufficient to pay its debts and liabilities resulting

in his determination of the necessity for the assessment. It would appear that it is this evidence which certain of the defendants relied upon as forming the basis for their contentions that the action of the Superintendent in making his ascertainment was unreasonable, arbitrary, capricious, in violation of their private rights, and therefore an abuse of discretion on his part which should invalidate the assessment.

The pleadings did not contain allegations of fact with respect to the manner and method of ascertainment. However, we have decided to consider this evidence on its merits, treating it as though a motion had been made and granted conforming the pleadings to the evidence.

In this connection we deem it proper to call attention to the recently published opinion of the Court of Appeals of the First Appellate District sitting by designation in the Eighth District as contained in the case of State ex S. H. Squire, Supt. v National City Bank of Cleveland, Appellee, 7 O. O. 696, wherein the court say:

"No matter how broad the statutory language conferring power upon an administrative officer may be, if he ignores the law enacted to control his action, a person whose private right is violated thereby may seek his remedy in the judicial court of appropriate jurisdiction. And where discretion is lodged in such officer there is an implied term in all such legislative enactments that such discretion will be exercised in a judicious manner, and not arbitrarily or capriciously. The arbitrary or capricious exercise of power by administrative officer offends against the due process clause of the federal and state constitution. It was in recognition of this principle that the legislature incorporated the express provision that the courts could correct wrongs committed by the Superintendent by abusing his discretion or exceeding his power. §710-95 GC.

"It is manifest that with this limitation it was the intention of the legislature to confer upon the Superintendent of Banks broad powers in the liquidation of insolvent banks, but nevertheless provided that when his action was challenged recourse could be had to the court by the aggrieved person. §§710-91, 710-92 and 710-95, GC."

From the evidence it appears that on the 27th day of February, 1933, the Union Trust Company, by an agreement entered into by and between the Clearing House Banks of Cleveland, including the Union Trust Company, entered upon a restricted withdrawal basis paying to its depositors 5% only of their deposits; that thereafter and in pursuance of a special act of the Legislature enacted February 27th, 1933, the Superintendent of Banks issued an order requiring the Union Trust Company to segregate 5% of its deposits theretofore set aside by it as a special deposit; that the remaining 95% of the deposits were segregated under the order of the Superintendent of Banks and that this order continued in full force and effect until June 15, 1933; that on the 15th day of June, 1933, the Superintendent of Banks found the Union Trust Company to be in an unsafe and unsound condition to transact a banking business and thereupon he posted a notice upon the door of each office of the bank stating that at the date and time of posting the notice all the business and property were in his hands for the purpose of liquidation; that a notice thereof was given by advertisement in a newspaper of general circulation in the county, and that thereafter there was filed with the Clerk of Common Pleas Court of Cuyahoga County a notice to the effect that he had taken possession of the business and property of the Union Trust Company for the purpose of liquidation; that thereafter on the 30th day of July, 1934, he determined that the assets would be insufficient to pay its liabilities and that this determination was based upon conferences with his special deputies in charge of the liquidation of the Union Trust Company and two or more deputies from his office in Columbus, and upon an evaluation and accounting of the assets made by his staff of deputies, special agents and assistants in charge of the liquidation of the Union Trust Company.

The evidence before the court clearly shows that from the time the bank was placed in liquidation until the date the double liability was assessed, examinations, analyses, and audits were made of the assets of the Union Trust Company and that the net result of these examinations of assets was the condensed statement of January 31, 1934, showing a deficit of approximately $26,000,000.

The court finds that the special deputy Superintendent of Banks, Oscar L. Cox, made a study of the assets and liabilities as of July 31, 1933, but because of financial and economic conditions existing at the time that such study was completed did not attempt to make an ascertainment or determination based upon that statement; that thereafter a new statement was prepared, which is incorporated in this opin-

ion, under date of January 31st, 1934; that during the time of the preparation of the statement and after its completion it was discussed many times with the Superintendent of Banks and the Director of Commerce and with members of the stockholders committee, in order to secure the best final judgment that could be obtained; that thereafter, in July of 1934, he advised the Superintendent of Banks of the findings made; that prior to that time and about that time various conferences were had with the Superintendent of Banks and others on the subject of the condition of the bank; that prior to making up the statement of January 31st, 1934, he had issued a memorandum to his department heads, a copy of which is marked Defendant's Exhibit 1, and is as follows:

"February 8th, 1934.
"MEMORANDUM TO:
"Messrs: H. F. Burmester
 H. E. Hills
 E. N. Wagley
 W. O. Stromberg
 G. H. Robertson
 C. B. Anderson

"Supplementing memorandum of January 11th, Mr. Robertson has received the asset classification suggested by the first four above, and after review I suggest the following classifications for all except real estate and real estate loans:

"1. (a) GOOD Amounts assuredly collectible or marketable with reasonable promptness.

(b) SLOW Other estimated sound values believed realizable or maintainable during ensuing eighteen months.

2. DOUBTFUL Further speculative amounts, the realization or non-realization of which cannot be estimated at this time,— in other words, the amounts which are clearly doubtful to the appraiser.

3. LOSS Remaining amounts for which no data or basis indicating further realization is found.

"As to real estate and real estate loans, the same principles will prevail, the details of application to be outlined in memorandum prepared by Mr. Hills and approved by the writer.

"OSCAR L. COX,
"Special Deputy Superintendent of Banks."

That thereafter in pursuance of the memorandum to the department heads analyses and classifications were made by said department heads in pursuance of said instructions in writing, for an examination of which reference is made to the exhibits admitted in evidence; that thereafter upon receipt of the analyses and classifications made by the department heads and upon examining the same, the said deputy superintendent of banks took some considerable counsel with others, took into account his own experience running over a good many years of dealing with such assets; that he took some counsel in the State of Ohio to see what the experience had been here with deputy state superintendents and other executives who had handled other liquidations, the executives in the Federal Reserve Bank and the banks of this state and the executives of the Reconstruction Finance Corporation as well as with the senior associates engaged in the liquidation of the bank, and with the Superintendent of Banks; that after these examinations, conferences and studies he advised the Superintendent of Banks of the results thereof and thereupon the Superintendent of Banks made the ascertainment and determination which is now complained of by these defendants.

It must be borne in mind that this testimony of the Superintendent of Banks, of the deputy superintendent in charge of liquidation, of the various department heads of the bank, is wholly uncontroverted in the record. The history of the entire proceedings from the time the Superintendent of Banks took charge of the assets of the Union Trust Company for liquidation down to the date of this hearing indicates a most careful, painstaking, conscientious and diligent effort properly to administer the affairs of the bank and properly to arrive at a correct conclusion with relation to its financial status under the difficulties then prevailing. There is no testimony in the record showing otherwise.

Considerable stress and emphasis is placed by counsel for the defendants on the fact that after the analyses had been made by the department heads in the classifications requested as shown in the memorandum of instructions to department heads that the deputy Superintendent of Banks made what are termed "executive cuts." By executive cuts are meant the deductions made by the deputy superintendent from the findings made by the department heads.

The defendants argued that the action of the Superintendent of Banks in making the so-called executive cuts was arbitrary and unreasonable. We do not so find. In the first place with the exception of the appraisal of the Union Trust Building hereafter referred to we do not view the

analyses of the department heads as "appraisals," of their examinations, by whatever name they may be called as final or binding upon either the deputy superintendent of banks or the Superintendent of Banks. The analyses and classifications made by the department heads were not in fact final appraisals. They were merely their best judgment as to the classifications, under instructions, of the assets at the time that their analyses were made.

The final responsibility rested with the Superintendent of Banks. He had a right to rely upon his deputy superintendent of banks in charge of the actual liquidation. The deputy superintendent of banks had a right to rely upon his department heads, but it was his right and properly his duty to reserve final judgment with respect to their findings.

If in his judgment their values were too high or too low it was within his province to adjust those values in accordance with his judgment. It clearly appears that he did this not arbitrarily and unreasonably but after consultation with them and with others, such as the executives of the Reconstruction Finance Corporation, other superintendents in charge of liquidation and the Superintendent of Banks himself.

Finally we reach the conclusion that the Superintendent of Banks himself, being charged with sole responsibility, had a right to rely upon the judgment of his deputies in charge of liquidation. That his judgment was sound it seems to us is borne out by the facts as disclosed in the later statements and even today, three years after this determination was made, we find that according to the latest statements in evidence, while there has been a considerable reduction in the liabilities due in part to the apparent good management and administration of the assets, there is still a deficit of approximately $13,000,000.

In reaching these conclusions we would not have it understood that this court agrees with all the methods employed by the Superintendent in making his ascertainment, and we further wish to emphasize that we are convinced from the evidence that the appraisals were not entirely free from error.

Taking the Union Trust Building as an illustration, it appears that the appraisal made by Morris S. Halliday was arrived at on the basis of rental return only. As stated by the defendants, "The sole factor taken into consideration was the earnings of this building"; that their value for liquidating purposes was obtained by capitalizing earnings at 5%. No consideration apparently was given to the important elements of location, utility or probable improvement in business conditions. We are of the opinion that it was not necessary for the Superintendent of Banks in making his ascertainment at the time to take into consideration probable improvement in business conditions or probable improvement in economic conditions generally, but we are of the opinion that in valuing this item it would have been the part of wisdom to give consideration to the location, inasmuch as the corner of East 9th and Euclid Avenue is perhaps one of the most important business locations between New York and Chicago. We believe also that it would have been well if consideration had been given to the factor of reproduction costs, less reasonable allowances for depreciation in arriving at an evaluation.

The evidence shows that the cost of the land was $3,500,000. and that the cost of the building was $13,600,000—a total of $17,-100,000. At the time of the condensed statement it was carried on the books at $11,464,933. The property stands on the tax duplicate for approximately $8,000,000, and the total liquidating value was estimated to be $5,557,593.91. However, it should be pointed out that this value represented the equity, that is the total appraisal less the amount of the mortgage of $3,300,000 to the Northwestern Mutual Life Insurance Company.

We are not prepared to say, however, that the appraisal made was an error as of that date. While we might incline to the belief that the appraisal of this asset should have been higher, there is nothing in the evidence before us warranting a final conclusion on this subject.

It is clear that even if allowance were made for an increase of several million dollars on this item, the liabilities would far exceed the assets, or, to put it in other words, the assets of the bank would still be insufficient to pay its debts and liabilities.

As hereinbefore stated there is no testimony of a positive nature showing or tending to show that the valuation should have been higher than that given, and when we examine the testimony of the appraisal we must be impressed with the degree of care which was employed by the appraiser in making the appraisal on the basis of a capitalization of the earnings. The care with which the appraisal was made on this basis would, it seems to us, negative any infer-

ence of abuse of discretion. Then, too, it is clear that by reason of experience and ability, as disclosed by the testimony, this witness was well qualified to make such an appraisal. It follows, therefore, naturally, that the deputy superintendent of banks had a right to rely upon his judgment although he was not concluded thereby.

As stated before herein the Superintendent of Banks had a right to rely upon the judgment of his deputy superintendent and those in his employ, so long as care was exercised with respect to the instructions given and in the selection of the employees. There is nothing in the evidence to indicate that the Superintendent of Banks or the deputy superintendent were not careful in the selection of employees.

It may be that some assets should have been appraised at a higher value than that shown in the statement, and it may be that some should have been appraised at a lower value. There is nothing positive in the evidence offered by the defendants on this subject. There is no evidence before the court on which to base such a judgment.

It is not the duty or the province of the court to substitute its judgment for the judgment of the Superintendent of Banks. It is a rule of law that courts will not substitute their judgment for that of an administrative officer's excepting where he has abused his discretion.

"The ordinary rule is that the action of a municipal officer vested with discretionary powers will not be interfered with or controlled by a court in the absence of bad faith, fraud or abuse of discretion."

Logan Branch of the State Bank of Ohio, ex parte, 1 Oh St 432;
State ex Ins. Co. v Moore, 42 Oh St 103;
State ex Atty. Gen. v Hawkins, 44 Oh St 98;
DeCamp v Archibald, 50 Oh St 618;
State of Ohio ex v Guilbert, Auditor, 56 Oh St 575, at page 601.
State ex Van Harlington v Board of Education, 104 Oh St 360.

"The rule is firmly established that the courts will not interfere with executive officers or boards in the performance of duties which are discretionary in their nature, or involve the exercise of judgment unless the conclusion is such as to amount to fraud, bad faith, or gross abuse of official discretion conferred upon such officer or board. 32 Ohio Jur., Public Officers, §73. Control by the Courts."

We believe also that it must be conceded that in viewing the acts of the Superintendent in the matter of appraisals, ascertainment and determination, that we are viewing them in restrospect, more than three years after the event. It is fundamental that the acts of the superintendent should be viewed and judged as of the time that the ascertainment was made. In support of this proposition see Anderson v Akers, 7 Fed. Supp. 294, and In re: Balfe's Will, 274 N. Y. S. 284-294.

Taking all the evidence into consideration, it is quite clear that the defendants have failed to show an abuse of discretion on the part of the Superintendent in the method and manner of making his examinations and appraisal of assets. From the evidence before us it would appear that the ascertainment was carefully made, and that taking into consideration that it is practically impossible to arrive at an absolute certainty with regard to such matters, in view of wide differences of opinion even among experts themselves, we reach the conclusion that the ascertainment and determination was made by the Superintendent with a reasonable degree of certainty, that he did not engage in a "guessing contest" on the basis of wholesale speculative estimates of liquidating values, and that he did not apply arbitrary "rule of thumb" methods of appraisal of the assets, on a wholesale basis.

We find he complied in all respects with the statute, and that on the evidence with respect to this phase of the case he performed his duty under the law.

A considerable part of argument, both oral and as contained in the briefs has been devoted to the question of whether or not the Superintendent of Banks was guilty of abuse of discretion in excluding the item of interest on accounts receivable. It is clear from all the evidence that the Superintendent excluded interest on both the asset side and the liability side in making his evaluation, although the item of interest was given some consideration in the appraisement of securities where it was thought collectible and was excluded in other cases where the collection of the principal was somewhat doubtful. The testimony of the deputy superintendent of banks also is to the effect that in his appraisals generally he injected some element of hope for the future. As we view his position it was neither his duty nor even within his province to speculate with respect to possible sums which would be real-

ized by way of interest. It seems to us that it was his duty to make his ascertainment and determination in accordance with facts as they were in evidence before him, and thereupon to make his determination as to whether or not the liabilities exceeded the assets.

While §710-91 GC specifically provides that "interest on deposits shall thereupon cease to accrue at the rate specified in the contracts of deposit," it also provides that this shall be "without prejudice to the rights of the depositors to receive interest, with other creditors, from the date of such posting out of the funds produced by the liquidation of such bank before distribution thereof is made to shareholders on their shares."

Counsel for defendants argue that this means that there shall be no interest paid to depositors. While this paragraph of the statute, it is true, terminates the contract of deposit, nevertheless it is susceptible of the interpretation that depositors shall be entitled to what is generally termed damage interest at the rate of 6% under the provisions of §8305 GC. It has been in fact held that depositors are entitled to such interest.

Flynn v American Bank & Trust Co., 104 Me. 141; as reported in 19 L.R.A. (n.s.) 428;
Richman v Irons, 121 U. S. 27;
In re Warren, 52 Mich. 557;
Zang v Wyant, 25 Colo. 551;
Mahoney v Bernhard, 45 App. Div. 499 Affd. without op. 169 N. Y. 589;
Wheeler v Miller, 90 N. Y. 333;
Cumberland Lumber Co. v Clinton Hill Lumber Co., 64 N. J. Ed. 521;
Grund v Tucker, 5 Kas. 70;
Wells F. & Co. v Enright, 127 Calif. 669.

This proposition is likewise supported by a case cited by the defendants, In re Liquidation of Sun Savings Bank v The Common Pleas Court of Wood County, 4 Ohio Op. 519, syllabus 1 of which is as follows:

"Where a banking corporation is in the hands of the Superintendent of Banks for liquidation and double liability has been imposed upon the stockholders and payment thereof enforced so that sufficient assets remain in the hands of the Superintendent, after the principal claims of depositors and creditors have been paid, to pay interest accrued upon such claims, under §8305 GC, such depositors and creditors are entitled to accrued interest on their claims before distribution is made to the stockholders."

Of course there is no allowance of interest on preferred claims for the very reason that if interest were paid they would not be preferred claims. In other words the theory of allowance of preference is that the bank is holding funds as a bailee upon which no interest is paid, so that cases involving a preference have no application.

It would appear to us that the general weight of authority is that interest is payable to depositors, although not at the contract rate, as provided by statute. In the event that interest is payable to depositors a large portion of the interest accrued or collected which the defendants claim the Superintendent should have taken into consideration, would be taken up by the interest claims of depositors substantially reducing its interest item as an asset.

However, we find another element of fact in the evidence which would negative any question of an abuse of discretion upon the part of the Superintendent, in respect to the matter of interest, and that is that he consulted with the Attorney General with respect to this matter—that is the particular counsel assigned by the Attorney General as counsel for the Superintendent and his deputies,—and the counsel for the Attorney General at that time either did not, or for some reason was not able to, give an opinion on this subject. In view of all the evidence on the subject, we hold that the Superintendent was not guilty of an abuse of discretion in this respect.

The next question to be considered is the issue raised by the denials of the answers of certain defendants that the Superintendent of Banks had included as liabilities of the bank certain obligations which had been created by the liquidator after the Superintendent of Banks had taken possession of the bank, and that such obligations, together with interest paid thereon by the liquidator, could not properly be charged against stockholders. The court finds that the Superintendent of Banks, after taking possession and after the bank had been closed borrowed from the Reconstruction Finance Corporation $31,306,899.98 from the National City Bank of Cleveland, $5,202,404.00 from the Reconstruction Finance Corporation through the Western Reserve Mortgage Company $20,263,544.49, making a total sum of $56,772,848.47, and that the interest had been paid on these obligations.

The court also finds with respect to this claim that at the time the Superintendent of Banks took possession of the business

and assets of the Union Trust Company for purposes of liquidation, there existed certain loans from the Reconstruction Finance Corporation and from certain other large banks. The court further finds that there was then existing a large number of claims of depositors for money which had been placed by them with the bank for deposit.

It further appears that after the liquidation was commenced the Superintendent of Banks as liquidator of the Union Trust Company's assets, in pursuance of the provisions contained in §710-95a GC, made application to the Court of Common Pleas for authority to borrow money with which to pay for or refinance the loans existing at the time such bank assets were taken over for liquidation, which loans included the loans to the Reconstruction Finance Corporation and certain large banks, and for authority also to use a portion of said loans for the payment prorata of a dividend on the claims of depositors. The court finds that after a hearing upon the application of the Superintendent of Banks to this court for authority to borrow money with which to pay off or refinance existing loans, and for authority to use a portion for the payment of dividends, **the authority prayed for was granted** to the Superintendent of Banks, and the Superintendent of Banks was authorized by the court to make the loans aforesaid for the purposes aforesaid and the testimony in this case shows that the proceeds of the loan authorized by this court were used in part to refinance existing indebtedness to the Reconstruction Finance Corporation and other banks, and to pay a dividend to depositors. The court further finds that later applications were made for renewal of said loans and that this court has heretofore granted such applications.

It is the claim of these defendants that these obligations cannot be considered obligations of the bank for which stockholders are liable by reason whereof the liabilities of the bank for which stockholders might be liable were $30,843,900.75 less than the assets and that therefore, considered in connection with other claims of abuse of discretion which we have heretofore considered herein, this action on the part of the Superintendent of Banks amounted to an abuse of discretion and was a wilful, wrongful act, and that the determination and assessment should be set aside by this court. This claim is based upon §3, **Article XIII of the Constitution of the State of Ohio** which provides that:

"The stockholders of corporations, authorized to receive money on deposit shall be held individually responsible equally and ratably for all contracts, debts, and engagements for such corporations."

Sec 710-95a GC in which such authority is given is as follows:

Sec 710-95a GC:

"Superintendent of Banks or other person in charge of closed bank authorized to borrow money; purposes of loan; application; publication; hearing. The Superintendent of Banks, liquidating agent, receiver or other person or persons lawfully in charge of the property and affairs of closed banks are authorized, upon the order of the Common Pleas Court in and for the county in which the principal office of such bank was located, to borrow money and to issue evidence of indebtedness therefor, and to secure the repayment of the same by the mortgage, pledge, transfer in trust and hypothecation of any or all of the property of such bank, whether real, personal or mixed, superior to any charge thereon for expenses of liquidation as provided in §710-97 GC hereof. Such loans may be obtained for the purposes of facilitating liquidation, protecting or preserving the assets in his charge, expediting the making of distribution to depositors and other creditors, providing for the expenses of administration and liquidation and aiding in the reopening or reorganization of such bank or its merger or consolidation with another bank or the sale of all its assets. The Superintendent of Banks, liquidating agent, receiver or other person or persons lawfully in charge of the affairs of such bank, shall be under no personal obligation to repay any such loans so made and shall have power to take any and all action necessary or proper to consummate such loan and to provide for the repayment thereof and to give bond, when required, for the faithful performance of all undertakings in connection therewith. The Superintendent of Banks, liquidating agent, receiver, or other person or persons in charge of the affairs of such bank shall make application to said Common Pleas Court for approval of such loan and the giving of security therefor. Notice of such application shall be given by publication once each week for two consecutive weeks, in each case upon any week day of the week, in a newspaper of general circulation in said county and by notice from the Superintendent of Banks, liquidating agent, receiver or other person or persons lawfully

in charge of its affairs to such bank, by service of a copy thereof upon an officer or upon a majority of the directors acting at the time such bank was closed, of the time and place of making application to said court for such order. Hearing on such application shall be had not less than ten days after the first publication of such notice. At the hearing upon such application any stockholder, depositor or other creditor of such bank shall have the right to appear and to be heard thereon. Prior to the obtaining of such court order, the Superintendent of Banks, liquidating agent, receiver or other person or persons lawfully in charge of the affairs of such bank may make application or negotiate for such loan or loans, subject to the obtaining of such court order."

There has been no claim made in this case that the Superintendent of Banks did not comply with these provisions of §710-95a GC, in respect to his application for authority to pledge the assets for the purpose of refinancing existing loans, and paying a dividend to depositors.

Neither has any claim been made on the part of the defendants and no evidence was introduced in this case tending to show that the Superintendent of Banks was attempting to use any portion of the bank's assets for the payment of any claim which was not a legal obligation of the bank. It would appear to us that the defendants should have raised this question in the hearing before the court upon the application of the Superintendent of Banks for authority to make the loan and to pledge the assets. We do not find any evidence in this case showing that they opposed such application. However, we do not feel that the defendants are concluded by reason of this from raising the question in some other manner.

Another question arises and that is with respect to the right of the defendants to raise the question in this suit by reason of the fact that §710-95 GC provides a method by which either the stockholders or creditors can proceed against the Superintendent of Banks if in the liquidation of the assets he seeks to do an act which is illegal. This provision of the General Code is as follows:

"Sec 710-95 GC. Powers and duties of Superintendent upon taking possession of bank."

Immediately following sub-section 5:—
"In case of doubt or difficulty the Super-

intendent may ask the instruction of such court or judge thereof as to the manner in which he shall exercise his powers and discretion. **He shall not be directed or restrained in the exercise of his powers of discretion otherwise than in a suit in equity in which it shall be alleged and proved that he has exceeded or abused such powers and discretion."**

It would appear that it was the intention of the Legislature, in enacting this section of the General Code, to provide for an action by injunction, either mandatory or restraining, wherein the equity powers of the court would be invoked to require the Superintendent to do something which he should do or to restrain him from exceeding or abusing his powers and discretion. The evidence is clear that the defendants did not attempt to avail themselves of this provision of the act by injunctive process and are merely raising the issue now as a matter of defense to this action for the collection of superadded liability.

It would appear that a like situation was presented to the United States Supreme Court in the case of Casey v Galli, 94 U. S. 673; in that case certain of the defendants sought to defend against the enforcement of stockholders' superadded liability on the grounds that the comptroller of currency had allegedly decided to pay certain claims from the assets of the bank and the superadded liability for which the corporation was not legally liable. In respect to this claim the court said:—

"3rd. That the controller has decided to pay a large amount of claims against the bank for which the bank is not responsible and that aside from these claims there was means enough already in his hands to meet the liabilities of the bank.

"The same objection lies to this plea as to the preceding one and the same authority applies. If the receiver intends to violate or shall violate his duty in discharging the trust confided to him, the remedy must be sought in another proceeding. It cannot avail the defendant in this action."

However, even though the defendants have not availed themselves of the provisions of the General Code providing for injunctive process we have, nevertheless, decided to consider the question as raised in this suit on its merits. We have already held in this case that the obligation of a

stockholder to the depositors and creditors is a primary obligation. See **Squire v Abbott, 5 Oh. Op.** 352. Paragraph 10 of the syllabus as reported is as follows:

"The liability imposed by §3, **Article XIII of the Ohio Constitution** is not a secondary one but a primary one. Upon the insolvency of the bank the obligation is immediately enforceable before the assets of the bank have been liquidated, and it is unnecessary for the court to determine whether the assets of the bank are sufficient to pay its liabilities."

We are supported in this proposition by the following cases:

**Baumgardner v State ex Fulton, 48 Oh Ap 4, (16 Abs 716);**

**Trustees of Ohio Wesleyan University v State ex Fulton, 50 Oh Ap 51;**

**State ex Fulton v Weinberger, 44 Oh Ap 264;**

**State ex Fulton v Cole, 14 Abs 465;**

**Bailey v State ex Squire, Oh Ap Cuyahoga County, No. 15187;**

**State ex Fulton v Bremer, 130 Oh St 227.**

It follows then that when the bank fails to meet its obligations in the regular course of business the obligations of a stockholder to the depositor and creditor become defined and fixed.

The evidence in this case shows that the date when the bank failed to meet its obligations in the regular course of business was February 27th, 1933. The debts which were paid and refinanced by the loans and pledge of securities approved by the court were debts of the bank existing at that date. The creditors at that date, were it not for the provisions of **Sub-section 10 of §710-95 GC** which vests the exclusive jurisdiction to enforce the superadded liability in the Superintendent of Banks during the time he is in possession of the business and assets for purposes of liquidation, could have instituted a suit for the enforcement of the superadded liability of the stockholders for the payment of such debts then existing. The obligation of the stockholder is in favor of the creditor. **Snider v United Bank & Trust Co., 124 Oh St 375.**

At the time the Union Trust Company incurred the debt to the depositor or creditor the stockholder at that time became indebted to such depositor or creditor.

**Poston v Hull, 75 Oh St 502, 505;**

**Harphold v Stobert, 45 Oh St 397-403;**

**Brown v Hitchcock, 36 Oh St 667;**

**Culp v Fleming, 65 Oh St 321.**

The case of **Snider v State Bank, 124 Oh St 375, and State ex Fulton v Bremer, 130 Oh St 227,** are authority for the proposition that the Superintendent of Banks as a party plaintiff to enforce the superadded liability is merely a statutory plaintiff and acts merely on behalf of all of the creditors of the bank.

The first two paragraphs of the syllabus of the case of **State ex v Bremer,** are as follows:

"1. The State of Ohio, while a nominal party in an action brought by the Superintendent of Banks against the stockholders of a bank to enforce the superadded liability imposed by §3 **of Article XIII of the Constitution of Ohio,** has no proprietary or pecuniary interest in the result of the action and in such action is not suing in its sovereign capacity.

"2. Such an action is for the benefit of the creditors of the bank and not for the benefit of the State of Ohio * * *."

It would appear therefore from a consideration of the foregoing that there was a vested right in the stockholders as of the 27th day of February, 1933, to collect the superadded libility by reason of the debts and contracts among others which were owing to the Reconstruction Finance Corporation and other banks and depositors, and that the fact that these debts were paid in whole or in part by new loans under authority of approval of the court made no change in respect of the rights and liabilities of the parties existing as of the time that the bank failed to meet its obligations in the regular course of business.

In other words inasmuch as it clearly appears from the evidence that the Superintendent, acting in his statutory capacity under authority of court pledged certain assets with which to refinance existing loans and to make a part payment to depositors, did not by the process pay illegal claims or fail to comply with the statute in respect of the proceedings before the court, it could not be said that the stockholders have been prejudiced by reason of the change in the form of the liabilities or that just because a refinancing process took place under authority of court as provided by law, that such debts created by the refinancing were not in fact debts and contracts of the bank.

The defendants dely upon the case of Schrader v Manufacturers National Bank of Chicago, 133 U. S. 67. Upon an examination of this case we do not find the facts

analogous to the facts in the case at bar. In that case it appears that the bank went into voluntary liquidation, its charter was surrendered, and after this the president of the bank apparently without the authority of any court executed certain contracts of guaranty in the name of the dissolved bank, and it was sought then to apply the assets of the bank in payment of the guaranties made by the president. Among other things in that case it was held by Mr. Chief Justice Blatchford, who delivered the opinion of the court, that—

"(4.) The rights of the stockholders could not be affected by the acts of the president done after the bank had gone into liquidation."

This is, of course, sound law, but it has no application to the facts in the instant case where the action of the Superintendent was in pursuance of the statutes and with authority of the court after notice to all interested parties, including directors and stockholders.

The Superintendent of Banks may have erred in the terminology used in his statement, when he stated "loans due to the R. F. C.", but the terminology is not important, the facts are important, and we find, as a matter of fact, that he complied with the statutes in all respects, had the authority of this court for the action taken, and that this action did not prejudice the rights or interests of the stockholders in any way and was not in contravention of the provisions of §3, **Article XIII of the Constitution.**

We find further that although the subject is not discussed in the memorandum opinion of the Court of Appeals under date of July 30th, 1936, in the case of **M. E. Bailey et v The State of Ohio ex Squire,** No. 15,187, that the same issues were raised, and that the Court of Appeals of this district passed on this same question deciding the issues against the defendants who thereupon prosecuted error to the Supreme Court and that the Supreme Court overruled the motion to certify and dismissed the petition in error filed as a matter of right on the ground that no constitutional question was involved.

Inasmuch as the defendants in this case have raised this issue on the ground of a violation of constitutional right, we are of the opinion that the action of the Supreme Court, while not decisive of the issue, is very persuasive as to the view of that court on the constitutional question raised. However, that may be, the action of the Court of Appeals is decisive of the question, and is binding upon this court.

In view of all of the foregoing we find with respect to this charge of abuse of discretion and wilful, wrongful act, that the Superintendent of Banks was not guilty of an abuse of discretion or wilful, wrongful act in the pledge of the assets to secure the loans aforesaid.

Other questions have been raised in this case, some of which have been passed upon by this court as reported in this same case at 5 **Ohio Opinions,** 353, and others which the court has ruled upon in the separate findings of fact and conclusions of law filed contemporaneously herewith. With the exceptions noted in the separate findings of fact and conclusions of law, where in certain cases the court found for certain defendants on facts peculiar to their status in the case, judgment is rendered for plaintiff against all defendants; O.S.J.